UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CEDRIC ANDERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-CV-2481 SRW |
| | ) | |
| DAVID VANDERGRIFF,[1] | ) | |
| | ) | |
| Respondent(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Cedric Anderson for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

I.      **BACKGROUND**

In 2013, a jury convicted Petitioner of first-degree murder and armed criminal action. The Circuit Court of St. Louis County sentenced him to life imprisonment without parole on the count for first-degree murder and a consecutive 25 years in prison on the count for armed criminal action. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed his convictions. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's

---

[1] Petitioner is currently incarcerated at the Eastern Reception, Diagnostic, and Correctional Center in Bonne Terre, Missouri. *See Missouri Dep't Corr. Offender Search*, http://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited September 27, 2021). David Vandergriff is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas

relief before this Court.

The Missouri Court of Appeals described the facts of Petitioner's conviction as follows:

> Sometime in 2008, Defendant became unemployed and moved in with his mother, Jimell Anderson, and his stepfather, Victim. Defendant lived in the lower level of the home and his two children, S.A. and N.A., would visit on weekends. By November 2010, Defendant and Victim's relationship had become strained because Victim did not believe Defendant was doing enough to find a job. Apparently, Victim would talk badly about Defendant and intimidate Defendant by scowling at him, staring at him, and purposely bumping into Defendant's shoulder. Defendant made efforts to avoid Victim.

> On the morning of November 27, 2010, Jimell was in a bedroom helping S.A. get ready for a church function, while Defendant was in the basement with N.A. Victim was in the kitchen loudly complaining that the kitchen was messy. Jimell went to the kitchen to address Victim's complaint, then returned to her bedroom. S.A., at some point, went to the living room. S.A. then saw Defendant enter the kitchen and heard Defendant and Victim talking. S.A. observed Defendant go back downstairs and return with a gun. She then saw Defendant enter the kitchen and heard a gunshot. Jimell heard the shot and ran to the kitchen. Victim exited the kitchen into the hallway and, as he did so, both Jimell and S.A. saw Defendant shoot Victim. Victim passed Jimell in the hallway and Jimell stood between Defendant and Victim. Defendant, however, reached around Jimell and shot at Victim again. Jimell heard a total of three shots; neither Jimell nor S.A. saw a knife, or other weapon, in Victim's hand. Defendant went back downstairs.

> Jimell called 911 and reported that Defendant had shot Victim. Officer Sean O'Malley was the first to respond to the scene. Jimell said Defendant was in the basement and O'Malley shouted down the basement stairwell for Defendant to come upstairs "with [his] hands up." Defendant complied and told the officers where the gun was located. A pat down of Defendant revealed no weapons, but a live cartridge was found in Defendant's pants' pocket. Defendant had no injuries. Defendant was arrested and indicted on charges of first-degree murder and armed criminal action.

(ECF No. 10-1, at ).[2]

---

[2] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. The Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

## II.    STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim which has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's

presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.   DISCUSSION

Petitioner asserts eight claims for relief in his Petition: (1) the trial court abused its discretion when it refused to admit testimony that law enforcement had evidence the victim attacked Petitioner with a knife; (2) the trial court erred in instructing the jury as to the elements of second-degree murder; (3) the trial court abused its discretion in overruling Petitioner's motion for mistrial due to a firearm examiner's undisclosed expert testimony; (4) he received ineffective assistance of counsel when his trial counsel failed to call Dr. Rosalyn Schultz as a witness; (5) he received ineffective assistance of counsel when his trial counsel did not object to submission of the incorrect jury instruction for second-degree murder; (6) he received ineffective assistance of counsel when his trial counsel did not read the ballistics report before trial; (7) he received ineffective assistance of counsel when his trial counsel did not object to the admission of out-of-court statements from S.A.; and (8) he received ineffective assistance of counsel when his appellate counsel did not challenge the trial court's admittance of S.A.'s out-of-court statements.

A.      **Claim One – Evidence of a Knife**

In his first claim for relief, Petitioner argues the trial court abused its discretion in refusing to admit certain testimony from law enforcement officers. According to Petitioner, when police spoke to Jimell Anderson and S.A. at the scene on the day of the shooting, they reported to officers that Petitioner had told them the victim had pulled a knife on Petitioner. Prior to trial, the prosecution moved to exclude these statements as hearsay, and the trial court granted the prosecution's motion.

At trial, Petitioner's counsel attempted to elicit testimony on cross-examination from Officer Sean O'Malley, the first officer on the scene, Detective Matthew Wilson, the lead investigator, and Detective Candace Crenshaw, the officer who spoke to S.A., about Petitioner's statements regarding a knife. Counsel argued the evidence was critical to demonstrate the officers had knowledge a knife was used in the altercation, and they had a motive for tampering with the crime scene. Petitioner's counsel made offers of proof for Officer O'Malley's and Detective Wilson's testimony, but not Detective Crenshaw's. During the offer of proof, Officer O'Malley testified Ms. Anderson told him Petitioner said something about it being self-defense because the victim had a knife. Officer O'Malley stated he then searched the crime scene for any type of weapon. Detective Wilson testified Ms. Anderson informed him Petitioner told her the victim had pulled a knife on him. Detective Wilson then stated he told other officers to search the crime scene for a knife. After the offers of proof, the trial court again refused to admit any testimony on Petitioner's statements to Ms. Anderson about a knife.

On direct appeal, the Missouri Court of Appeals found Petitioner did not preserve for review his claim as to S.A.'s statements to Detective Crenshaw because he did not make an offer of proof as to Detective Crenshaw's testimony. (ECF No. 10-1, at 4, n.1). The Court of Appeals

reviewed the issue for plain error finding the trial court did not commit error, "plain or otherwise" in precluding the testimony regarding S.A.'s statements to Detective Crenshaw about a knife. *Id*.

When a state court decides a claim on state procedural grounds, rather than on the merits, as the Court of Appeals did here, federal habeas review is barred because the state court decision rests on independent and adequate state procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 730 (1991). A state court's discretionary plain-error review of an unpreserved claim does not excuse the procedural default. *Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015). Petitioner argues the Court should not apply *Clark* because it involved North Dakota law, not Missouri. Instead, he asserts the Court should apply *Bannister v. Armontrout*, 4 F.3d 1434, 1445 (8th Cir. 1993).[3]

The Court disagrees. Nothing in the *Clark* opinion suggests its holding should be limited to cases involving only North Dakota law. *Clark* addresses the Eighth Circuit's split of panel authority regarding "the effect of a state appellate court's plain-error review of an otherwise procedurally defaulted claim." *Clark*, 780 F.3d at 875-76. Throughout the opinion, the Eighth Circuit refers generally to a state appellate court's review, not specifically to a North Dakota appellate court's review. *Id*. at 875-77. In fact, the cases cited throughout the opinion involve states other than North Dakota. *Id*. This includes the case *Clark* cites for its ultimate holding, *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985) (a § 2254 petition seeking a writ on an Arkansas conviction). *Id*. at 876. *Hayes* held a federal habeas court cannot reach an otherwise

---

[3] As a "general rule," arguments raised for the first time in a reply brief are not considered by the Court. *Barhan v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006). Entertaining new arguments in a reply brief deprives the State of an opportunity to respond, delays adjudication of the petition, and uses valuable judicial resources. The Court, however, has considered the arguments in Petitioner's reply brief and will deny them on the merits. The Court cautions that, in the future, the undersigned may not consider arguments raised for the first time in a reply brief.

unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error. 766 F.2d at 1253.

The case Petitioner asks us to apply, *Bannister*, is specifically cited in *Clark* as an example of one of the split-panel decisions which had occurred. *Id*. at 876. Thus, *Clark* overruled the holding in *Bannister* when it held the earliest precedent, *Hayes*, must apply. Petitioner also cites to *Antwine v. Delo*, 54 F.3d 1357 (8th Cir. 1995), but this case is also inapplicable. The Eighth Circuit, in *Clark*, specifically states courts must follow the earliest precedent, which is *Hayes*, decided in 1985. *Clark*, 780 F.3d at 875-77. Thus, the holding of *Antwine*, decided in 1995, is not applicable. The Court finds the decision in *Clark* applies.

Finally, Petitioner asserts the procedural bar does not apply because the legal conclusions of the Court of Appeals' ruling are not independent of federal law, citing to *Ake v. Oklahoma*, 470 U.S. 68 (1985). In *Ake*, the Oklahoma state court held the petitioner waived a claim on direct appeal because he did not raise it in his motion for new trial. 470 U.S. at 74. The state argued the federal court should not review the claim because it rested on an independent and adequate state ground. *Id*. However, under Oklahoma law, the waiver rule did not apply to fundamental trial error, and federal constitutional errors were considered fundamental. *Id*. at 74-75. Thus, the Supreme Court held the state court's determination of whether the state's waiver rule applied required an analysis of federal law, making the state waiver rule dependent on federal law. *Id*. at 75. The state procedural question was not independent and adequate. *Id*. Federal review of the claim was not precluded. *Id*.

Petitioner cites to no Missouri case or law suggesting the same analysis of federal law is required in this state to determine if a claim is waived as is required in Oklahoma. Nor does the Court of Appeals' decision in Petitioner's case make an analysis of federal law or suggest such

an analysis is needed. Petitioner fails to link the circumstances in *Ake* to the circumstances in his own case and fails to show how its holding should apply here. There is no reason the procedural bar and the holding of *Clark* do not apply in this case. Thus, Petitioner's claim as to S.A.'s statements to Detective Crenshaw is procedurally barred "unless [he] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has not done so, and his claims regarding the admissibility of the statements of S.A. to Detective Crenshaw regarding a knife are procedurally barred.

The Court of Appeals reviewed the issue as to Ms. Anderson's statements for abuse of discretion. In addressing the claim, the Court of Appeals applied state law on hearsay statements. (ECF No. 10-1, at 5-6). The court held Officer O'Malley's and Detective Wilson's testimony that they received information from Ms. Anderson, without specifically mentioning Petitioner's statements to Ms. Anderson about the knife, adequately explained why the police looked for a knife, or other weapon, at the crime scene.[4] *Id*. at 6. The court explained,

> Under the circumstances, it sufficed to introduce evidence that the officers' conversations with Jimell prompted the investigation for the knife; the substance of that conversation, i.e., Defendant's out-of-court-statement, constituted extraneous detail. When out-of-court statements go beyond what is necessary to explain subsequent police conduct they are hearsay. Consequently, Defendant's claim, that his statements were necessary to explain why the police searched for a knife, is unavailing.

*Id*. at 6-7 (internal citations and quotations omitted).

The Court of Appeals also rejected Petitioner's argument the out-of-court statements were admissible to establish the police's motive to tamper with the crime scene. *Id*. at 7. It concluded:

---

[4] For example, Detective Wilson was asked on cross-examination, "So you specifically told them to go in and look for a knife after you talked to Mrs. [Jimell] Foote?" He answered, "Yes." (ECF No. 13-7 at 770).

> Here, the fact and substance of Defendant's statements are not relevant to show that the police had a motive to purposefully hide evidence supporting Defendant's self-defense theory or otherwise fail to adequately process the crime scene. That Defendant told Jimell that Victim had a knife, who then reported Defendant's statement to O'Malley and Wilson, does not tend to make the existence of police misconduct any more or less probable. Therefore, even assuming that Defendant's out-of-court statements were offered for a valid purpose – to show motive – the statements were nonetheless irrelevant and, hence, inadmissible.

*Id*. (internal citations omitted). Finally, the Court of Appeals held that even if the trial court erred in excluding the testimony, Petitioner has not shown he was prejudiced as a result, stating:

> Other evidence of Defendant's guilt was overwhelming. Physical evidence showed that Victim was shot in the back twice and the trajectory of the bullets through Victim's body suggest that he was running away from Defendant when he was shot. Additionally, S.A. saw Defendant, after talking to Victim in the kitchen, go downstairs and come back up with a gun before shooting Victim in the kitchen. Afterward, both Jimell and S.A. saw Defendant shoot Victim in the hallway. Neither witness reported seeing Victim in possession of a knife. While Defendant suggests that he was prejudiced because exclusion of the statements prevented him from challenging the State's argument that Defendant did not act in self-defense because no knife was found at the scene, the record indicates otherwise. Defendant vigorously cross-examined law enforcement witnesses regarding their investigation of the crime scene, revealing multiple lapses in their processing of the crime scene, and defense counsel argued during closing argument that no knife was found because law enforcement had been negligent in their investigation. Defendant's statements had little to no probative value in this regard, as Defendant's statements were not tantamount to evidence that a knife was present at the scene or that police acted negligently or with a sinister motive to conceal the alleged knife's existence. Therefore, even if Defendant's out-of-court statements had been admitted, there is no reasonable probability that the hearsay statements would have changed the result of the trial.

*Id*. at 8.

The State argues the Court of Appeals' decision is entitled to deference under 28 U.S.C. § 2254(d). However, even though Petitioner argued the admission of this evidence violated the Sixth and Fourteenth Amendments of the Constitution before the Court of Appeals, the court only addressed Petitioner's arguments as to the applicability of Missouri's rules on hearsay statements. Consequently, this Court's standard of review is less deferential. *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007) (although raised by the petitioner, "the Missouri

court did not adjudicate a federal due process claim with regard to this issue. Accordingly, our standard of review is less deferential.").

With limited exceptions, "admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief[.]" *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994). "Thus, on habeas review of a state conviction, a federal court does not examine whether evidence was properly admitted under state law." *Tokar v. Bowersox*, 1 F. Supp. 2d 986, 1004 (E.D. Mo. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). Rather, review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)). Thus, the Court will address Petitioner's constitutional arguments, but will not review the Court of Appeals' decision regarding the applicability of Missouri's hearsay rules.

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Thus, the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Id*. at 326. "Well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id*. State courts may "exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

10

This Court cannot find the trial court's rulings excluding Petitioner's statements to Ms. Anderson denied him a meaningful opportunity to present a complete defense or were "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Holmes*, 547 U.S. at 324; *Osborne*, 411 F.3d at 917. The exclusion of this evidence did not make Petitioner's "entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). The trial court applied ordinary rules of hearsay used in courts across the country.

Petitioner argues the exclusion of these statements prevented him from arguing the officers' knowledge of these statements impacted the manner in which they processed the crime scene. He asserts this argument would have supported his claim of self-defense and his theory that the knife was not at the crime scene because the officers tampered with evidence or failed to adequately search for the knife. However, the trial court did not exclude the evidence in its entirety, but instead crafted a solution to comply with Missouri's rules of evidence while still allowing Petitioner to present his defense that the officers tampered with evidence. The officers testified they had information about a knife which explained their actions in searching for a knife at the scene. Petitioner's counsel was permitted to vigorously cross-examine the officers on their handling of the crime scene.

Furthermore, Petitioner does not demonstrate how this argument would have altered the outcome of the trial when his trial counsel thoroughly cross-examined the officers as to their search methods and their handling of the crime scene, and Petitioner himself testified he acted in self-defense after the victim attacked him with a knife. Petitioner has not established the exclusion of this evidence fatally infected the trial. He has not met the high burden of

establishing the trial court's evidentiary rulings violated the Constitution. Therefore, the Court will deny the Petition as to this claim.

### B.     Claim Two – Jury Instruction Error

In his second claim for relief, Petitioner asserts the trial court erred in giving to the jury instruction number six, the verdict-directing instruction for second-degree murder. The instruction given to the jury incorrectly instructed the jury on the mens rea element of the charge. The instruction stated: "Second, that the defendant knew or was aware that his conduct was practically certain to cause the death of David Foote or that it was the defendants (sic) purpose to cause physical injury to or to cause the death of David Foote." (ECF No. 13-3, at 105). The instruction should have stated "serious physical injury" rather than "physical injury."

Petitioner raised this claim in his direct appeal, but the Court of Appeals reviewed the claim for plain error because Petitioner did not object to the instruction at trial or raise the issue in his motion for a new trial. (ECF No. 10-1, at 9-10). Petitioner's claim is procedurally defaulted before this Court because he waived it before the state court. The Court of Appeals' decision rests on independent and adequate state procedural grounds, and the court's discretionary plain-error review of Petitioner's claim does not excuse the procedural default. *Coleman,* 501 U.S. at 730; *Clark*, 780 F.3d at 876-77. Unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," his claim is procedurally barred. *Coleman*, 501 U.S. at 750. Petitioner has not established cause and prejudice or that a failure to consider this claim will result in a fundamental miscarriage of justice. Therefore, the Court will dismiss this claim as procedurally barred.

12

### C.      Claim Three – Undisclosed Expert Testimony

In his third claim for relief, Petitioner asserts the trial court abused its discretion in

overruling his motion for mistrial due to the testimony of the firearms examiner, Detective

Michael Wunderlich. The Missouri Court of Appeals described the situation as follows:

> During the State's case-in-chief, Wunderlich testified that he examined the
> live rounds of ammunition at the prosecutor's office after he had completed his
> initial report. Wunderlich indicated that, upon this subsequent examination, he
> found "ejection marks" on the live cartridges consistent with being "chambered and
> extracted and ejected from a firearm." Wunderlich indicated that the marks meant
> the cartridges had been in a gun. After the State's examination of Wunderlich and
> outside the presence of the jury, Defendant objected to this testimony on the basis
> that he had received no reports from the State that Wunderlich had looked at the
> ammunition at the prosecutor's office and determined them to be "misfires."
> According to Defendant, Wunderlich's testimony had unfairly surprised him,
> causing prejudice, because Wunderlich had changed his conclusion from his
> deposition testimony, in which Wunderlich had testified that (1) he did not note any
> markings consistent with manual ejections and (2) that there was no suggestion that
> the cartridges had been misfired or that the gun had jammed because the cartridges
> lacked any "light firing pin impressions." Defense counsel initially asked that the
> jury be instructed to disregard the testimony pertaining to the marks found on the
> live rounds, but then moved for mistrial. The trial court denied the motion for a
> mistrial and, at Defendant's request, permitted Defendant the opportunity to cross-
> examine Wunderlich. During cross-examination, Wunderlich confirmed that there
> was no evidence that the cartridges had been ejected from the gun due to the gun
> misfiring or jamming.

(ECF No. 10-1, at 14).

The Court of Appeals held the trial court did not abuse its discretion in denying the

motion for mistrial. *Id*. at 15. It found Detective Wunderlich's testimony "merely indicated that

the cartridges had been in the gun at some point and later ejected," and he was unequivocal in

stating "there was no evidence that the gun had been misfired or that the gun had jammed." *Id*.

The court stated the testimony had no impact on Petitioner's theory of self-defense and did not

"buttress" the State's case. *Id*. Thus, the failure to disclose these findings did not affect

Petitioner's ability to prepare his defense. *Id*. The court further found the evidence does not

support Petitioner's suggested inference that he fired the gun more times than claimed or the gun

misfired live rounds, because Detective Wunderlich testified there was no evidence to support it. *Id*. It also held Petitioner failed to explain how his second suggested inference, that he manually extracted the cartridges during the crime, would refute his claim of self-defense. *Id*. at 16. The court concluded Petitioner failed to establish the discovery violation affected the outcome of the trial, therefore, his remedy of a mistrial was unwarranted. *Id*.

Petitioner argues the Court of Appeals' decision is contrary to, and involved an unreasonable application of *Lankford v. Idaho*, 500 U.S. 110, 120-121 (1991), which Petitioner argues held a state's late disclosure of exculpatory evidence violates the notice requirement of the Due Process Clause. *Lankford* does not hold as such. In *Lankford*, the petitioner was convicted of first-degree murder. *Id*. at 113. Prior to his sentencing, the trial court ordered the prosecution to notify the court and the petitioner if it was seeking the death penalty, and if so, the aggravating circumstances upon which it would rely. *Id*. at 114. The prosecution notified the court it would not recommend the death penalty. *Id*. at 114-15. Consequently, at the petitioner's sentencing hearing, the parties argued about the length of the sentence, but there was no discussion about the death penalty. *Id*. at 115-16. A few days later, the trial judge issued a ruling imposing the death penalty and listed five aggravating factors it found in support of imposing the death penalty. *Id*. at 117, 122. The Supreme Court held, "Petitioner's lack of adequate notice that the judge was contemplating the imposition of the death sentence created an impermissible risk that the adversary process may have malfunctioned in this case." *Id*. at 127. It reversed and remanded.

Beyond the general proposition that due process requires notice, nothing in the *Lankford* case appears to apply to the discovery issue in Petitioner's case. The more applicable standard is found in *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, the prosecution must disclose

14

favorable evidence to the defendant, whether the defendant requests it or not. *United States v. Anwar*, 880 F.3d 958, 969 (8th Cir. 2018). To establish a *Brady* violation, "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id*. (internal quotations and citations omitted). The evidence must be favorable and material, meaning there must be "a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." *Id*.

The facts presented in Petitioner's case do not establish a *Brady* violation. First, Detective Wunderlich's undisclosed testimony about the marks on the live rounds was not favorable to Petitioner. At trial, Petitioner's counsel argued the testimony was "highly inflammatory" and sought a mistrial because she believed it was so prejudicial to the defense. (ECF No. 13-7, at 976). At best, the testimony is irrelevant to Petitioner's guilt or innocence, but certainly not favorable to his defense or exculpatory. Second, a *Brady* violation only occurs if the favorable evidence was disclosed after trial. *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996). "Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, *Brady* is not violated." *Id*. Detective Wunderlich's new findings were disclosed during trial, not after, thus, the late disclosure is not a *Brady* violation. Simply put, Petitioner has alleged a violation of state discovery rules, but not a constitutional violation. As such, it is not redressable in a federal habeas petition. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law."). The Court will dismiss the Petition on this claim.

D.     **Claim Four – Failure to Call Dr. Schultz**

In his fourth claim for relief, Petitioner asserts he received ineffective assistance of

counsel when his trial counsel failed to call Dr. Rosalyn Schultz as a defense witness. The

Missouri Court of Appeals summarized the facts as it relates to this claim:

> After the events given rise to Movant's charges occurred, [S.A.] was interviewed by Detective Candace Crenshaw . . . Prior to trial, the State filed a motion in limine to admit hearsay statements of a child under section 491.075.1 RSMo Supp. 2013, relating to statements [S.A.] made to Detective Crenshaw after the shooting. At a hearing on the motion, Dr. Rosalyn Schultz, a licensed psychologist with expertise in forensic child investigation and interviewing, testified. . . .

> Dr. Schultz criticized Detective Crenshaw's interview of [S.A.] for a few reasons First, Dr. Schultz faulted the initial interview because it took place in a patrol car, which was not a neutral environment. However, Dr. Schultz recognized Detective Crenshaw may not have had any other choice but to conduct the interview in her vehicle. Second, Dr. Schultz pointed to the fact that there were two interviews, the first one was not recorded, and it was possible the first interview was suggestible or not done properly because Detective Crenshaw did not have any training in interviewing children. Third, Dr. Schultz testified Detective Crenshaw failed to comply with nationally recognized interview protocols, such as beginning the interview by building rapport. As another example, the detective asked [S.A.], "[t]ell me what happened," instead of "tell me everything that you remember." Fourth, Detective Crenshaw did not follow up with [S.A.] about inconsistencies between the two statements and she failed to explore alternative explanations.

> Dr. Schultz testified that if a child is exposed to extreme trauma, it may affect the accuracy of the child's reporting. Dr. Schultz also opined that if [S.A.] had heard her grandmother talking to the 911 dispatcher, it could have affected her statement to the police. Nevertheless, Dr. Schultz could not say with certainly (sic) whether either of these circumstances had happened in this case, merely stating it "may or may not have been the case."

> Dr. Schultz said in her professional opinion, Detective Crenshaw's interview with [S.A.] was "very faulty" and it "may have compromised" the accuracy, detail, and quality of the information obtained. However, Dr. Schultz could not definitively say whether [S.A.]'s statement was affected by trauma. Instead, she acknowledged it was possible for the child to give an accurate statement despite having witnessed traumatic events. Moreover, Dr. Schultz admitted she could not say whether [S.A.]'s statement was, in fact, unreliable, but only that it may not have been. Finally, Dr. Schultz stated she did not find anything suggestive in the recorded interview of [S.A.].

(ECF No. 10-2, at 14-16) (internal footnote omitted).

The Court of Appeals denied Petitioner's claim for two reasons. First, it held Petitioner failed to allege Dr. Schultz's testimony would have provided him a viable defense because it would not have negated an element of the crime for which Petitioner was convicted. *Id*. at 19. Second, the court found Petitioner failed to show Dr. Schultz's testimony would have been admissible at trial. *Id*. at 20. Under Missouri law, expert testimony on the credibility of child witnesses or victims is inadmissible as it invades the province of the jury. *Id*. Therefore, Petitioner's trial counsel could not be ineffective for failing to call a witness who would not have been allowed to testify. *Id*.

The Court of Appeals' decision is entitled to deference. 28 U.S.C. § 2254(d). In order to prevail on an ineffective-assistance-of-counsel-claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): (1) he must show his counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A defense attorney's decision not to call a witness is "a virtually unchallengeable decision of trial strategy." *Jackson v. United States*, 956 F.3d 1001, 1007 (8th Cir. 2020).

Petitioner has not established his counsel's performance was deficient by failing to call Dr. Schultz. It is unlikely Dr. Schultz's testimony would have been admissible under Missouri law. *See State v. Cobb*, 336 S.W.3d 201, 209-11 (Mo. Ct. App. 2011) ("Missouri strictly prohibits expert evidence on witness credibility, as this would invade the province of the jury."

(internal citations and quotations omitted)). In *Cobb*, the Missouri Court of Appeals affirmed the trial court's exclusion of Dr. Schultz's expert testimony on the interviewer's technique when interviewing a child. *Id*. Petitioner's counsel cannot be ineffective for failing to call a witness who would not have been permitted to testify.

Petitioner has also not shown he was prejudiced by his counsel's failure to call Dr. Schultz. Her testimony would have been used to impeach S.A's statements to Detective Crenshaw. However, S.A. also testified at the trial and provided statements which were not entirely consistent with her statement to Detective Crenshaw. S.A.'s statements and testimony were only one part of the evidence presented against Petitioner. The details of what occurred were established primarily by Ms. Anderson's testimony. Dr. Schultz's testimony would have had no effect on S.A.'s trial testimony or Ms. Anderson's credibility. For these reasons, the Court of Appeals' decision is entitled to deference, and the Court will deny the Petition on this claim.

### E.      Claim Five – Failure to Object to Jury Instruction

In his fifth claim for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to object to the submission of the erroneous second-degree murder jury instruction. There is no dispute the instruction for second-degree murder did not follow substantive law in that it permitted the jury to find Petitioner's intent was to cause physical injury rather than serious physical injury. On direct appeal, the Court of Appeals affirmed Petitioner's convictions finding that the incorrect jury instruction did not affect the jury's verdict. (ECF No. 10-1, at 11-12). On appeal of the denial of his PCR motion, the Missouri Court of Appeals denied Petitioner's ineffective assistance of counsel claim on this point, finding he did not

demonstrate he was prejudiced by his attorney's error. (ECF No. 10-2, at 8). The Court of

Appeals held:

> After a review of the record, this Court finds the instant case is not one of the small number of cases in which the application of the plain-error standard of prejudice and the *Strickland* standard of prejudice will produce different results. Section 565.020.1 RSMo 2000, which forms the basis of Movant's first-degree murder conviction, provides a person commits the offense "if he or she knowingly causes the death of another person after deliberation upon the matter." According to both [Ms. Anderson]'s and [S.A.]'s testimony and statements presented at trial, which were supported by forensic evidence, Movant shot Victim three times, with at least two of these shots occurring after Victim was trying to get away from movant, and after the shooting, Movant returned to the basement. Further, [S.A.]'s statements indicated Movant had time to deliberate as he left the kitchen after exchanging words with Victim, went to the basement, and returned with the gun with which he shot Victim. Based on the foregoing evidence of deliberation, we find that, even if Instruction No. 6 would have included the omitted term, there is no reasonable probability the jury would have acquitted Movant of first-degree murder and convicted him of the lesser offense of second-degree murder.

*Id*. at 9 (internal citations omitted).

The Court of Appeals' decision is entitled to deference. 28 U.S.C. § 2254(d). Petitioner

has not demonstrated he was prejudiced by the jury instruction error, and he must do so to

establish a claim for ineffective assistance of counsel. *Strickland*, 466 U.S. at 690, 694. As

summarized by the Court of Appeals, there is ample evidence to support Petitioner's conviction

for first-degree murder which requires a person to "knowingly cause[] the death of another

person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. "Deliberation" is defined

as "cool reflection for any length of time no matter how brief." *Zink v. State*, 278 S.W.3d 170,

178 (Mo. 2009) (citing Mo. Rev. Stat. § 565.002.3). The statements and testimony from S.A. and

Ms. Anderson as to Petitioner's actions before and after the shooting establish Petitioner acted

with deliberation. Thus, Petitioner has not shown that even if his trial counsel had properly

objected, and a correct instruction for second-degree murder had been given, he would have been

convicted of second-degree murder rather than first-degree murder. For this reason, Petitioner

has not established prejudice, which is necessary to support a claim for ineffective assistance of counsel. The Court will deny the Petition as to this claim.

### F.   Claim Six – Failure to Read Ballistics Report

In his sixth claim for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to read Detective Kramer's ballistics report before trial. During argument between the prosecutor and Petitioner's counsel over Detective Wunderlich's undisclosed new testimony about marks on the live rounds, the prosecutor mentioned Detective Kramer's ballistics report which stated there were "inconclusive marks on the live cartridges." The prosecution had listed Detective Kramer as a potential witness when it believed Detective Wunderlich may not be available to testify. It subsequently withdrew its endorsement of Detective Kramer when Detective Wunderlich confirmed he would be available to testify. Petitioner's counsel stated she did not review Detective Kramer's report because the prosecution withdrew its endorsement of him.

The Court of Appeals denied Petitioner's ineffective assistance of counsel claim on this point by applying the standards for counsel's alleged failure to investigate a claim. (ECF No. 10-2, at 12-13). The court held:

> Having reviewed the entire record in this case, we find Movant's claim is without merit as he has failed to establish how Trial Counsel reviewing Detective Kramer's ballistics report would have improved or aided his position at trial. The information included in Detective Kramer's report was brought before the jury during Detective Wunderlich's testimony and Trial Counsel cross-examined Detective Wunderlich about it. Further, because Detective Wunderlich testified prior to Movant, Trial Counsel did have the opportunity "to address the matter of the ejected bullets during [Movant's] testimony" and could have "provided the jury with an alternate explanation for the discharged bullets." Based on the foregoing, we find Movant has failed to prove there is a reasonable probability that, but for Trial Counsel's failure to read Detective Kramer's ballistics report, the outcome of his trial would have been different.

(ECF No. 10-2, at 13).

The Court of Appeals' decision is entitled to deference. 28 U.S.C. § 2254(d). Petitioner has not established his counsel was ineffective for failing to read a report of an unendorsed witness. He cites no case law to support his argument. Petitioner has also not shown how he was prejudiced by his counsel's failure to read the report. To establish prejudice, Petitioner must show that if his counsel had read Detective Kramer's report, there is a reasonable probability he would have been acquitted. *Strickland*, 466 U.S. at 694. He has not done so. The Court will deny the Petition as to this claim.

### G.    Claim Seven – Failure to Object to Hearsay Statements

In his seventh claim for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to object to the admission of S.A.'s out-of-court statements on the basis that Missouri Revised Statute § 491.075.1 only allows out-of-court statements be admitted if the offense was one "performed with or on a child by another." At the time of Petitioner's offense, November 2010, § 491.075.1 was limited to offenses "performed with or on a child by another." (ECF No. 10-2, at 16); Mo. Rev. Stat. § 491.075.1 (2009). However, at the time of Petitioner's trial, September 30-October 4, 2013, the statute was not so limited as the legislature had amended the statute. (ECF No. 10-2, at 16); Mo. Rev. Stat. § 491.075.1 (2013). Thus, the Court of Appeals denied Petitioner's claim on this issue, stating:

> The Missouri Supreme Court has found it well-settled that "legislative changes to the rules governing whether particular evidence is or is not admissible are to be applied prospectively to all trials occurring on or after the effective date of that change." Statutory amendments that do not increase the punishment, change the elements, or alter the ultimate facts necessary to establish guilt of an offense, but merely remove existing limitations on the competency of evidence relate only to procedures in which no criminal defendant may be said to have a vested right, and which the State may freely regulate based on public policy.
>
> By its terms, section 491.075.1 is clearly a rule of evidence, as it concerns the admissibility of certain hearsay statements from children under the age of fourteen as substantive evidence in criminal proceedings. Moreover, the 2012 amendment to the statute was procedural in nature as it did not increase the

punishment, change the elements, or alter the ultimate facts necessary to establish guilt of an offense, but merely removed the limitation that hearsay statements from children may only be admitted under the statute in criminal proceedings related to offenses "performed with or on a child." Therefore, section 491.075 RSMo Supp. 2013 applies prospectively to all trials occurring on or after its effective date of August 28, 2012.

In light of the foregoing principles, we reject Movant's argument that section 491.075 RSMo Supp. 2009 applied to his trial. Section 491.075 RSMo Supp. 2013 governed Movant's trial that began on September 30, 2013, over a year after the amendment's effective date. Under this version, its application was not limited to offenses "performed with or on a child" and we will not find Trial Counsel ineffective for failing to raise a non-meritorious objection based on an outdated version of the statute. Thus, the motion court did not clearly err in denying Movant's claim for post-conviction relief.

(ECF No. 10-2, at 17-18) (internal citations and footnotes omitted).

The Court of Appeals' decision is entitled to deference. At the time of Petitioner's trial, § 491.075.1 was not limited to offenses "performed with or on a child by another." Therefore, it would have been pointless for his trial counsel to make such an objection. Trial counsel is not ineffective for failing to make a non-meritorious objection. *Storey v. Roper*, 603 F.3d 507, 525 (8th Cir. 2010); *see also Wright v. Minor*, No. 4:17-CV-837 DDN, 2020 WL 247972, at *6 (E.D. Mo. Jan. 16, 2020) ("Counsel cannot be held to be ineffective for refraining from making a meritless objection."). The Court will deny the Petition as to this claim.

### H.    Claim Eight – Failure to Appeal Admittance of Hearsay Statements

In his final claim for relief, Petitioner asserts he received ineffective assistance of counsel from his appellate counsel who did not challenge the trial court's decision to grant the State's request to admit S.A.'s out-of-court statements under Missouri Revised Statute § 491.075. Petitioner provides no specifics beyond alleging his ineffective appellate counsel violated his Fifth, Sixth, and Fourteenth Amendment rights. The Court of Appeals also had difficulty determining what exactly Petitioner was asserting but interpreted this claim as alleging Petitioner's appellate counsel should have challenged the admission of the statements because

22

his offenses were not "performed with or on a child," and his appellate counsel should have challenged the admission because the time, content, and circumstances of S.A's statements did not provide sufficient indicia of reliability to warrant their admission under the statute. (ECF No. 10-2, at 22).

The Court of Appeals rejected both arguments. For the first, it found the argument to be meritless because at the time of Petitioner's trial, § 491.075 was not limited to offenses "performed with or on a child." *Id*. For the second, it held:

> Even if this Court were to assume *arguendo* this claim of error was so obvious that a competent and effective lawyer would have recognized and asserted it on appeal, Movant has failed to establish a reasonable probability that, if it had been raised on direct appeal, the outcome of Movant's appeal would have been different. This is because even if [S.A.]'s hearsay statements were improperly admitted under section 491.075.1, the error would not have required reversal unless Movant was prejudiced as a result. But we will not find prejudice based on the admission of hearsay testimony where, (1) the evidence was at least partially cumulative to evidence before the trial court, or (2) the declarant also testified as a witness at trial, testified as to the same subject matter included in the hearsay statements, and was subject to cross-examination.

> In this case, [S.A.]'s out-of-court statements to Detective Crenshaw were at least partially cumulative to [S.A.]'s testimony at trial as well as to [Ms. Anderson]'s testimony and statements presented at trial. To the extent [S.A.]'s out-of-court statements differed from her testimony at trial, she was subject to cross-examination about the inconsistencies. Accordingly, Movant was not prejudiced by the admission of [S.A.]'s out-of-court statements, Movant's claim the trial court erred in admitting them would not have required reversal had Appellate Counsel raised it on appeal, and thus, Movant cannot establish he was prejudiced by Appellate Counsel's alleged error. Therefore, the motion court did not clearly err in denying Movant's claim of ineffective assistance of appellate counsel.

(ECF No. 10-2, at 22-23) (internal citations omitted).

The Court of Appeals' decision is entitled to deference. *See* 28 U.S.C. § 2254(d). Petitioner has not shown he was prejudiced by his appellate counsel's alleged failure to raise this claim. Petitioner fails to establish that, even if his appellate counsel had challenged the admission

of S.A.'s out-of-court statements, the outcome of his appeal would have been any different. The Court will deny the Petition as to this claim.

Accordingly,

**IT IS HEREBY ORDERED** the Petition of Cedric Anderson for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Cedric Anderson's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 U.S.C. § 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 29th day of September, 2021.

*/s/ Stephen R. Welby*

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE